JS-6
O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SA CV 14-0052-DOC(ANx)            Date: April 21, 2014

Title: HID GLOBAL CORPORATION V. ISONAS, INC.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [16]**

      Before the Court is Defendant Isonas's motion to dismiss for lack of personal jurisdiction and lack of subject matter jurisdiction (Dkt. 16). The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving and opposing papers, the Court concludes that it lacks personal jurisdiction over Isonas and so GRANTS the motion to dismiss.

**I.**      **Factual Background**

      Plaintiff HID filed this declaratory judgment action seeking a declaration that its products do not infringe on Defendant Isonas's patent, U.S. Patent No. 7,775,429 ("Method and System for Controlling Access to an Enclosed Area"). FAC ¶ 17. Isonas produces products in the physical access security industry and competes with HID in certain areas, including access card readers. FAC ¶ 16. HID is a Delaware corporation with its principal place of business in Irvine, California. FAC ¶ 3. Isonas is a Colorado

corporation with its principal place of business in Boulder, Colorado. FAC ¶ 4. Isonas was once located in the Central District of California, and HID estimates that it had an office in this district until 2005. FAC ¶ 7.

HID and Isonas have a business relationship. Isonas incorporates HID's products into some of its own products, purchased $75,000 in products from HID in 2013, and has paid hundreds of thousands of dollars in licensing royalties over the past several years. FAC ¶ 9. HID further alleges that Isonas sells its products in California, has distributors that ship to California, and has advertised at least two California installations of its products on its website. *See* FAC ¶¶ 7-12. Isonas attended a key trade show in the Central District in 2009, and has sold or installed at least hundreds of thousands of dollars of its own products in this District. FAC ¶¶ 13-14. At least two contracts between Isonas and HID include forum selection clauses indicating this District, and provide that California law governs the terms.

HID filed this declaratory judgment action after Isonas made two communications referencing infringement of the '429 Patent. First, HID alleges that in September, 2013, Isonas's CEO met with senior executives of HID at a trade show in Chicago, Illinois. FAC ¶ 18. Isonas's CEO told HID's representatives that Isonas believed HID was infringing Isonas's '429 Patent. HID further alleges that Isonas's CEO told HID that Isonas's attorney had evaluated the '429 Patent for infringement and validity and felt strongly about Isonas's infringement claim against HID's Edge Series readers. Isonas also told HID that another entity might purchase Isonas and try to assert the '429 Patent against HID. FAC ¶ 19.

Then, on October 9, 2013, an investment banker exclusively representing Isonas sent an email to Assa Abloy, HID's parent company, stating that "[w]e believe it is imperative for either HID or Assa Abloy to acquire Isonas because HID's Edge Series directly infringes on Isonas' patent." HID alleges that Isonas told this investment banker of its belief that HID's Edge Series infringes the '429 Patent. FAC ¶ 20.

On January 13, 2014, HID filed the instant declaratory judgment lawsuit. FAC at 1. Isonas filed the instant motion to dismiss, arguing that this Court lacks personal jurisdiction and subject matter jurisdiction under the Declaratory Judgment Act.

II. **Legal Standard**

A defendant may bring a motion under Federal Rule of Civil Procedure 12(b)(2) to challenge the district court's exercise of personal jurisdiction over the defendant. The plaintiff bears the burden to establish personal jurisdiction. *Menken v. Emm,* 503 F.3d

1050, 1056 (9th Cir. 2007). In patent cases, the Court applies Federal Circuit precedent to determine whether it has personal jurisdiction over a defendant. *HollyAnne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1306 (Fed. Cir. 1999).

Where a district court's disposition of the personal jurisdiction question is based on affidavits and other written materials, a plaintiff need only make a prima facie showing that the defendant is subject to personal jurisdiction. *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.,* 395 F.3d 1275, 1282 (Fed. Cir. 2005). The district court must construe all pleadings and affidavits in the light most favorable to the plaintiff and resolve any factual conflicts in the affidavits in the plaintiff's favor. *Id.* at 1282-83.

"Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1359 (Fed. Cir. 2001). "[B]ecause California's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Id.* (citing Cal. Code Civ. P. § 410.10).

The Supreme Court set forth the due process standard in *International Shoe v. Washington,* in which it held that "due process requires only that . . . [the Defendant] have certain minimum contact with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." 326 U.S. 310, 316 (1945). "Under the 'minimum contacts' test, a defendant may be subject to either specific jurisdiction or general jurisdiction." *LSI Industries, Inc. v. Hubbell Lighting, Inc.,* 232 F.3d 1369, 1375 (Fed. Cir. 2000).

General jurisdiction exists when a defendant maintains "continuous and systematic" contacts with the forum state even if the cause of action has no relation to those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984). Where a defendant is not subject to general jurisdiction in the forum state, a district court may nonetheless exercise specific jurisdiction over the defendant if the cause of action "arises out of" or "relates to" the defendant's in-state activity. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985). "Specific jurisdiction exists when a nonresident defendant purposefully establishes minimum contacts with the forum state, the cause of action arises out of those contacts, and jurisdiction is constitutionally reasonable." 3D Systems, Inc. v. Aarotech Laboratories, Inc., 160 F.3d 1373, 1378 (Fed. Cir. 1998).

### III. Discussion

a. General Jurisdiction

"[A] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851, 2853-54 (2011); *Helicopteros,* 466 U.S. at 414 n.9). With respect to a corporation, the place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction." *Daimler*, 134 S. Ct. at 760.

*Daimler* is the Supreme Court's most recent discussion of this question. In that case, the Court determined that a German car manufacturer did not have sufficient contacts in California to render it subject to general jurisdiction. The Court assumed for the sake of argument that the California contacts of Daimler's subsidiary, MBUSA, could be attributed to Daimler. *See id*. at 760 ("Even if we were to assume that MBUSA is at home in California, and further to assume MBUSA's contacts are imputable to Daimler, there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there."). The Court described these contacts in the following way:

> Although MBUSA's principal place of business is in New Jersey, MBUSA has multiple California-based facilities, including a regional office in Costa Mesa, a Vehicle Preparation Center in Carson, and a Classic Center in Irvine. According to the record developed below, MBUSA is the largest supplier of luxury vehicles to the California market. In particular, over 10% of all sales of new vehicles in the United States take place in California, and MBUSA's California sales account for 2.4% of Daimler's worldwide sales.

*Id.* at 752.

HID claims that the following facts establish general personal jurisdiction over Isonas in this district: (1) Isonas was formed in California in the late 1990s and maintained an office in Orange County, California until at least 2005; (2) Isonas's sales in California are the result of a "concerted effort directed toward" this district; (3) Isonas and HID have done business together since roughly 2001 to the tune of hundreds of thousands of dollars, during which time HID was based in

Orange County; (4) in 2013, Isonas purchased $75,000 worth of products from HID; (5) two agreements between Isonas and HID have clauses requiring all disputes to be litigated in California; (6) Isonas has advertised and sold its products throughout the Central District; (7) Isonas's website includes information about two recent installations of Isonas products in the Central District; (8) Isonas sells its products to distributors in the Central District; (9) Isonas was an exhibitor at an industry trade show in the Central District in 2009; and (10) Isonas's net sales to shipping points in California were approximately 3.5% of its total national sales in 2013.

In light of *Daimler*, it is clear that Isonas does not have sufficient contacts with California to render it subject to any lawsuit here. These are not the kind of "continuous and systematic" contacts that establish general jurisdiction. The fact that Isonas had an office until nearly nine years ago suggests past contacts with the forum, but a substantial amount of time has passed. Hundreds of thousands of dollars in business over the course of thirteen years is similarly uninformative, and more must be shown than regular purchases. *See Helicopteros*, 466 U.S. at 416 (rejecting general jurisdiction based in part on systematic purchases costing "substantial sums" and regularly sending personnel to the forum). The Court in *Daimler* expressly refused to "approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" *Daimler*, 134 S. Ct. at 761. The Court held that "[t]hat formulation . . . is unacceptably grasping." *Id*.

Although HID argues that *Daimler* is inapposite because it refers to an international corporation being sued in the United States, this distinction is immaterial. The *Daimler* opinion makes clear that a "foreign" corporation is one either outside the United States *or* a sister state to the forum state. *See Id*. at 754. The *Daimler* opinion further discusses the "transnational context" of the case in an entirely separate section from the general jurisdiction analysis, further demonstrating that Daimler's international citizenship is irrelevant to the question of its systematic and continuous contacts. *See id*. at 762. Because it is clear that Isonas has far fewer contacts with California than did Daimler, this Court cannot exercise general jurisdiction over the company.

      b.  Specific Jurisdiction

Because general jurisdiction is lacking, the Court turns to specific jurisdiction. To analyze whether specific jurisdiction exists, the Federal Circuit has set out a three-part test in which the Court determines whether: "(1) the defendant purposefully directed its

activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362-63 (Fed. Cir. 2006).  With respect to the last prong, the burden of proof is on the defendant, which must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" under the five-factor test articulated by the Supreme Court in *Burger King*. *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995) (quoting *Burger King,* 471 U.S. at 476–77).

In the context of a declaratory judgment action for non-infringement, however, "the nature of the claim in a declaratory judgment action is 'to clear the air of infringement charges.'" *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (quoting *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)).  Such a claim "arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit."  *Id*.  Therefore, for purposes of specific personal jurisdiction, the Court looks at the extent to which "the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim "arises out of or relates to those activities.'"  *Id*. (quoting *Breckenridge,* 444 F.3d at 1363).

The Federal Circuit has made clear that those enforcement activities must be more than simply "letters threatening suit for patent infringement sent to the alleged infringer."  *Id*. at 1333.  Thus, "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum *and related to the cause of action* besides the letters threatening an infringement suit." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003) (emphasis added).

The other activities "that relate to the *enforcement* or the *defense of the validity* of the relevant patents" that may justify the exercise of specific jurisdiction include "initiating judicial or extra-judicial patent enforcement within the forum" and "entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum."  *Avocent*, 552 F.3d at 1334.  Possible examples of "other activity" justifying specific jurisdiction also include: (1) interfering with a defendants' products at a trade show and informing customers that the products infringed, *see Campbell Pet Co. v. Miale*, 542 F.3d 879, 886-87 (Fed. Cir. 2008); (2) "communicat[ing] their complaint to a third party with the intent that the third party take action directly against plaintiffs' business interests," *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063 (10th Cir. 2008) (copyright); and (3)

retaining counsel in the forum state to engage in negotiations in the forum state and file infringement lawsuits in the forum state, *see Kyocera Commc'ns, Inc. v. Potter Voice Technologies, LLC*, 13-CV-0766-H BGS, 2013 WL 2456032 (S.D. Cal. June 5, 2013).

Commercial sales of the patentee's products in the forum are not sufficient on their own to justify specific jurisdiction, because "a defendant patentee's mere acts of making, using, offering to sell, selling, or importing products—whether covered by the relevant patent(s) or not—do not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement, invalidity, and/or unenforceability." *Avocent*, 552 F.3d at 1336. Therefore, "such sales do not constitute such 'other activities' as will support a claim of specific personal jurisdiction over a defendant patentee." *Id*.

In addition to the facts it alleges in support of general jurisdiction, HID argues that Isonas is subject to specific jurisdiction in the Central District because: (1) Isonas created a continuing relationship and obligations with HID, a California resident based in Orange County; and (2) Isonas advertises, sells, and installs its products in the Central District of California. Opp'n at 10. HID argues that Isonas has therefore "taken deliberate actions within California and created continuing obligations with California residents sufficient to satisfy the purposeful availment requirement." Opp'n at 10. HID argues that its longstanding business relationship with Isonas is the source of this dispute, and so specific jurisdiction lies. The Court must look to the specific enforcement activities that Isonas has directed at the forum and determine whether they are sufficient to warrant personal jurisdiction. *See Avocent*, 552 F.3d at 1332-33.

Despite the existing business relationship between the parties, the dispute does not center on the contracts that the parties signed, the products Isonas purchased from HID, or any licensing relationships between the two. For specific jurisdiction to lie in a declaratory judgment action for patent noninfringement, the suit must "arise out of or relate to" the defendant patentee's enforcement activities in the forum. The only enforcement activities that HID alleges are the two communications between HID and Isonas, one from Isonas's CEO and the other from an investment banker representing Isonas. It is not clear that either communication could be considered "directed" at the forum, nor does it appear that there were any further efforts to enforce the '429 Patent against HID or any other entity in this district. There are no allegations of exclusive licensing or other lawsuits, for example.

The *Avocent* court made clear that general business contacts to the forum and efforts to market or sell products in the forum are relevant to general jurisdiction, but

generally not relevant to specific jurisdiction. The *Viam* case suggests that significant efforts to market and sell products based on the allegedly infringed patent can support specific jurisdiction in a similar case. *See Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996). However, the *Viam* defendant had far more significant contacts with the forum state of Ohio than HID alleges Isonas to have with California:

> Furthermore, Spal did not simply place its product into the stream of commerce. Spal knowingly and intentionally exploited the California market through its exclusive distributor's advertising in California, and by establishing channels for providing regular advice in California. Iowa Export advertised and sold, and is presently advertising and selling, Spal products, including the subject of the '386 patent, in California, and Spal provided Iowa Export numerous sales aids which Spal knew would be used in California for selling Spal products there. As in *Beverly Hills Fan,* "defendants, acting in consort, placed the . . . device in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Beverly Hills Fan,* 21 F.3d at 1566, 30 USPQ2d at 1008.
>
> Here Spal purposefully directed its activities at the forum State and Iowa Export, acting as Spal's agent, purposefully initiated the interaction with Viam that resulted in the instant suit. There is sufficient connection between the activity and the litigation to satisfy this prong of the *International Shoe* Due Process test.

*Viam*, 84 F.3d at 429 (footnote omitted). First, it is not clear what role *Viam* should play in the wake of the *Avocent* articulation of the necessary nexus between contacts and efforts to defend the patent at issue. Second, it is clear that Isonas has far fewer contacts with California than those evident in the *Viam* case. The Court therefore finds that this argument, even if viable in the wake of *Avocent*, would not meet the due process standard for exercising personal jurisdiction.

Isonas points to no acts directed at this forum that relate to or arise out of Isonas's efforts to defend the '429 Patent beyond the statement by Isonas's CEO and the email from its investment banker. First, the CEO's statement occurred at a convention in Chicago, not in California. Second, these are both the equivalent of infringement letters designed to notify HID of Isonas's belief of infringement and offer to negotiate a solution. These communications therefore cannot form the basis of specific jurisdiction

under *Avocent* without additional enforcement activities.  Because HID cannot satisfy the first and second prongs of the due process test, it cannot meet its burden to show a prima facie case of personal jurisdiction.

### IV. Disposition

The Court lacks general or specific personal jurisdiction over Isonas.  Therefore, the motion to dismiss is GRANTED.

The Clerk shall serve a copy of this minute order on counsel for all parties in this action.

MINUTES FORM 11
CIVIL-GEN                                                                                      Initials of Deputy Clerk: jcb